Our final case this morning, Kevin Woods versus LVNV Funding and Resurgent Capital Services. Mr. Parker, we're waiting for Ms. Strickler. Ms. Strickler, LVNV Funding, LLC There we go. All right. We have both counsel. Mr. Parker, you may proceed. Thank you, Your Honors. May it please the court, Jeffrey Parker for Appellant Kevin Woods. This case is about two things. First, whether any attempts to collect a debt arising out of identity theft can violate the FDCPA. And second, whether a reasonable jury can find fault with an investigation in response to an identity theft dispute that was so cursory that it did not even notice, let alone evaluate, the single purchase on the accounted issue. I suppose that the bottom line question here is why didn't Woods fill out the identity theft claim that LNVN sent him, or provide any of the other information that LNVN requested? I mean, a simple attestation that he was not the person who opened the account ought to have sufficed. Isn't this a problem for Mr. Woods? Your Honor, I would say no for a couple of reasons. First, because he did provide a notarized attestation that he was not the person who opened the account. Second, because the only piece of information that was requested on that form you're looking at, and you can look through that form and then look through the documents that Resurgent had, and it's done in the barristers as well. But the only piece of information that was on there that they didn't have was the exact date that Mr. Woods moved out of his previous address and everything else they already had. And they knew he'd moved out of his previous address a while before, because they knew that the address at which the credit card was opened was his second previous address. And they knew his correct address because that's where they sent him mail. So they knew that he had gone through two different addresses. And to think that he had been at the address where the credit card was opened at the time it was opened would have required him to have moved twice in nine months. So they knew that it was unlikely he was at that address, and they knew everything else that is on that form already. And more importantly, sorry, your honor, the statute also does not impose any obligations on him to conduct an investigation. The obligation is on the furnisher. The furnisher can't just offload it by sending a form and requiring people to go out and get it notarized in the hopes that people who are a little bit lazy won't fill it out. Just out of pure curiosity, did American Airlines ever reveal the name of the person to whom the ticket was issued? No, your honor, not to my knowledge. Addressing the first point briefly, the FDCPA point briefly, plaintiff's principal aim with respect to the FDCPA claim is to induce this court to clarify its holding in Burton. In that case, a plaintiff asserted that a credit card debt arose out of identity theft, but the only evidence of whether or not it was a business or a personal purpose that was remotely relevant was the list of purchases. And the indicative purchases, the purchases that clearly had one or the other sort of purpose, leaned in favor of a business purpose. So Burton was clearly rightly decided on its facts, but the wording of Burton, requiring that statements offered as evidence of consumer purpose provide, or quote, provide enough information for a trier effect to conclude these purchases were made for personal, family or household purposes, gives the impression that the statement or statements must go far beyond showing that a personal purpose was more likely than not. The district court's decision here shows how easily decision creep can render a rule like Burton's absolute, despite this court's attempt to leave a door open for claims like Mr. Woods'. Given the simplicity of the statements here, there's only one purchase on them. And the purpose of that purchase is easily determined by common sense. If the door in Burton was left open for a reason, this case is that reason. Mr. Parker, even if you're right about that, that particular point, and your reading of Burton is correct, what is it about the May 1 letter and the August 15 letter that satisfies the E10 substantive standard? And I have the letters right in front of me. Yes, Your Honor. They both assert that he continues to owe the debt. And that is a false statement. And it is in association with a collection of a debt. So I don't know what more can be required. It's a strict liability, except for with the bona fide error defense. But it's a false statement. It's in connection with a collection of a debt. And that's the way you interpret, that's the way you read E10 and the case law that interprets E10? No, that's correct, Your Honor. A false representation. I think that's, isn't that the statutory language? It has to be material, Your Honor, but yes, a false representation. All right. But I would argue that it is in fact material to the collection of the debt, whether or not the debt in fact exists or is his responsibility. Moving back onto the FCRI aspect, on March 8th, 2018, someone opened a credit card in Kevin Woods' name and had the physical card mailed to an old address of Mr. Woods. The same day the account was opened, they used it to make a single one-way airline purchase or airline ticket purchase between cities he'd never lived in. And the purchase was the only time the account was used and no payments were ever made on it. Resurgent had documents in its possession showing all of these facts clearly. Resurgent also learned from the ACDV the address to which the card was shipped was his second previous address. And we know they were confidently aware of his correct address no more than nine months after the card was opened because Resurgent sent him mail at the new address. When directly asked whether it had considered or even noticed any of these facts, Resurgent admitted it could not recall doing so. In fact, Resurgent testified it only did three things in response to the ACDV. First, it matched account-level data points. So far as we can tell, that only means that it matched his name and his address. Resurgent has never laid out any other account-level data points that were matched. And more importantly, they had to fudge it on the second one because the address did not in fact match. They also reviewed the ACDV and noticed that Mr. Woods, who is honest to a fault, had included with it a police report requested by Resurgent. And on that police report was a notation that he had shown the police the letters he'd gotten from American Airlines saying that American Airlines thought that the debt was his. And then the third thing they did was demand that Mr. Woods provide information they already had on a form that they wanted. The last point obviously was primarily done to dissuade individuals who don't have the wherewithal to go out and get something notarized and gather all the relevant documents. And it is, there is no obligation for the consumer to provide the, to do the investigation themselves. And it seems unreasonable to require, to allow a furniture to offload the requirement of investigation onto the consumer. The district court here found that no reasonable jury could have thought that that was an unreasonable investigation. An investigation that did not even look at the first page of a, Resurgent had a large stack of these statements from the very beginning of its consideration of this account. There was only one entry on the entire stack and it was on the first page and Resurgent never saw it. If that's not an unreasonable investigation, it's hard to imagine what could be. Obviously Mr. Woods could have also have provided a little bit more information himself, but if Resurgent is not required to even look and notice red flags, like the fact that there was a single purchase on the first day the account was open and nothing else was ever done with it, that it was sent to an old address so that Mr. Woods wouldn't get mailed, notifying him of it, all of these other facts, then what reason is there to believe that if Mr. Woods had sent the notarized letter saying also, you know, I was at this house for exactly seven years, that would have been enough for Resurgent to actually validate the dispute. It seems odd that Mr. Woods is responsible for, it is assumed that Mr. Woods giving the correct information would have resulted in Resurgent making the correct decision, whereas it is apparently assumed that if Resurgent had actually read the documents in its possession, that Resurgent would not, or that Resurgent would still not have found that the dispute was justified. I welcome the court's questions. Oh, you're into your rebuttal time.  Yes, I'd like to reserve for rebuttal, I apologize. Ms. Strickler. Good morning, your honors. Council, may it please the court. My name is Nicole Strickler and I represent the appellees in this case, Resurgent Capital Services and LVNV funding. Appellant makes three arguments in his brief in support of reversal of the district court's decision. However, before I begin,  that she asked council if possible. The question was, why did Mr. Woods not fill out the affidavit or provide a Resurgent with the information that they had requested on several occasions? He actually testified in his deposition transcript. The reason why he didn't is because he was represented by council, spoke with his council and determined it was unnecessary for him to respond. So that is actually what the evidence in the record shows relevant to that point. Now, in the briefing in this case, appellant argues basically three points. The first of which is that the evidence in the record is sufficient to establish that it is a consumer debt at issue. However, the only thing that they cite to support this is the fact that it is a one-way airline ticket. And the fact that it is a one-way airline ticket through speculation and conjecture, thus determines that it must have been for personal purposes. But there's nothing about the fact of a one-way airline ticket. Is there, I'm sorry, is a purchase by an identity theft ever a commercial expense? In other words, let's just say that I steal Judge Scudder's credit card information. And I use it to fly to the Seventh Circuit Conference because I'd rather do that than submit an expense report. Is that really a business expense? Well, Your Honor, I- Is it a personal rather than a business? I mean, can using stolen money ever be a legitimate business expense? I'm really mixed up. Well, I don't know. I don't know if the issue is really whether the expense is legitimate or not. I mean, I would argue that I think a thief could be using the money for the furtherance of some business he's undertaken, such as some startup or something else. He could use the money for any different purpose, whether or not it's truly legitimate or not. But I think the fact of the matter is, is we don't have any facts because they didn't do any discovery. So they didn't ask American Airlines any information through discovery. They didn't depose Citibank and get information about the type of account. Wait a minute, wait a minute. You know, that's another thing that has me going around in sparkles. You suggest that Woods could have subpoenaed American Airlines or Citibank to see the name of the ticketed traveler. Do you really think it's reasonable to think that an average citizen contesting a $377 airline ticket, which of course burgeoned into a $732 or $723 ticket, I guess, would be able to know how to subpoena an airline or have the resources to hire a lawyer to subpoena an airline? I mean, is your argument that that's the kind of information the unsophisticated consumer has to supply to contest a debt in the case of identity theft? No, Your Honor, I am arguing that as part of the case in chief, it's their burden to establish in this lawsuit that it's consumer debt and who does have the resources, knowledge, and ability to do so is their counsel. And that's part of their burden of proof at the case is to determine that. And I think that that's acknowledged also in the court's decision in Burton, which specifically referenced the fact that they didn't get any testimony from the creditor in that case, coincidentally. I think Burton, though, is a situation where you have multiple transactions on the credit card, and some of those are pointing in different directions, and so the court returns to the plaintiff bearing the burden because the plaintiff brought the lawsuit. Here we have a singular transaction, and I'm at a real loss to know what an individual could do. Well, Your Honor, I think the question is a bit confused because I think there's two different ways to look at it. What does the consumer do when he's looking at it in terms of identity theft before he's instituted this case and what their counsel has done? What does he do to satisfy the statutory criterion? He says, the statutory criterion is a transaction for personal, family, or household purposes. I assume that a person flew, bought an airline ticket to make a flight. Nobody knows who that actual person is as a matter of fact. Okay, business travel is rarely, not always, but rarely one way. That's a fair inference, and therefore the question is what else can he do here? Now, at the end of the day, you may have a very fair point that these two letters are not debt collection letters, but to say that it's controlled by Burton and there's some ironclad burden that Mr. Woods bears on this point I think is over-reading our case law, and the risk is that you're putting a plaintiff in an impossible position. Well, I think, Your Honor, there's a couple things that I can say in response to that. For one, again, the record's unclear as to what the ultimate trip was. Just because it was one one-way trip on a particular airline. How can anybody prove that? So let's suppose that we subpoena everyone under the sun. We don't know who took, we don't know who flew on the plane, if anyone. Well, we don't know if they bought a plane ticket and threw it in the trash. Well, I contend they could have figured it out, and perhaps that argument would have been shown. How? Well, they could have subpoenaed American Airlines. What's Ameri... Okay, let's play that out. Okay. Okay, American brings a 30B6 witness to your law firm. What's the American Airlines 30B6 witness to say? Well, when I go to the airport, the ticket's issued in someone's name. It's not my question. My question's not what happens when you go to the airport. What happens when you ask the American 30B6 witness the question I just identified? Well, I suppose I would ask them who was the ticket issued to? I would assume they would have that knowledge just based upon the fact that they keep records of who takes flights. Okay, they tell you the name. Then what? Well, I guess we're kind of down a speculative rabbit hole depending on what... No, no, no. We're not. We're on the statutory criterion that Congress put in 1692A5. Well, maybe we put them... Maybe it's his wife that took the flight. I really don't know. I mean, I would have no way of knowing. I mean, it wasn't my burden of proof, but what they could have done, if you don't mind, Judge Sutter, what they could have done is they could have pulled the credit agreement from Citibank. Generally, there is language in those credit agreements to talk about the purposes for which the card is issued. I've seen that many times over my years of practice in this area. They could have pulled the purchase agreement between LVNB and the creditor to see if there's any descriptions of the type of debt that was purchased. They could have done a lot of other things. They just didn't do them. So, if you wanna look back at Burton too, and I realize you feel that I've overread it. However, in that particular case, one of the issues there was that there was an email from Citibank to the plaintiff's attorney who said it was a consumer account and it was categorized as the consumer account and it was the same issue of identity theft. And ultimately, the Seventh Circuit panel in that case said, well, you should have gotten the testimony from Citibank to that effect if you wanted to render that evidence admissible, and that wasn't done. And these are some steps that they could have done in this case to make that point. But instead, all we're left here is just speculation about a single transaction as to what the purpose of that is. And I contend that the speculation and conjecture is not enough. You know, help me here. Sure. If someone claims he's been the victim of identity theft, is it really a reasonable investigation to look at the credit card and see that someone with the same name filled out the credit card application? How would that ever uncover evidence of identity theft? How would that ever uncover evidence of stolen identity? How would the credit card application identify? I don't know. I mean, there wasn't an issue in this case because to my recollection, the credit card application was not part of the package. Although I will say that if you look at the testimony of Anne Herfnick in the deposition, who was our corporate representative, she did testify that they looked at everything that they had including the bill of sale, matching the data points, they looked at all the statements that's included, and you can see that in the testimony. So to the extent my opponent says otherwise, that's not an accurate reflection of the record. Additionally, I'll just make one more point. I realize my point is up, but we can't forget here that the police report specifically stated that Mr. Woods acknowledged that American Airlines had investigated on two separate occasions and stated that they determined he owned the debt. I contend that's very persuasive evidence. I mean, if the merchant itself has said, hey, I've investigated this. I know you did this. Well, who is my client to say otherwise? I think that overstates our obligations under the reasonable investigation standard. So thank you, your honors. I appreciate for the time and I realize it's up. I'm happy to answer questions, but recognize my time is over. I'd like to speak to that last point first with respect to the letters from American Airlines. Those American Airlines was not in fact the issuer of the credit card. They were the merchant for the flight, but that is all that their interaction with it was. The two letters are only a handful of days apart because American Airlines essentially just rubber stamped and immediately sent them out. And American Airlines had no obligation to perform an investigation. And if an organization that is obligated to perform an investigation can offload its responsibility to perform an investigation to one that is not obligated and then not suffer the consequences and no one suffers any consequences when neither side has actually done a good investigation, then that completely defeats the purpose of the FCRA. Mr. Parker, let me go back though. Here's the issue that I think Ms. Strickler's right about. Against the backdrop of the point that Judge Rovner made at the outset of the oral argument, okay? When that police report is attached to those letters and your client's receiving the questionnaires and doesn't complete them at all, okay? I totally understand that there is an investigation obligation that's imposed upon the furnisher. I get that. But at some point, doesn't your client have to do something more than he did? I think that's the point that Ms. Strickler's making. Like because the letter with the police report attached is a bad fact, not a good fact for Mr. Woods. Your Honor, I would agree with that last characterization. I would point out though that the obligation is not on him and I'm sorry, I apologize. I had a thought there. Right. So all I'm trying to ask you is why in the totality of these circumstances did he not have to complete that questionnaire or do something else? Your Honor, because there was no indication. First of all, I would point out that there had been several previous investigations under the FDCP. He had had several previous disputes where he brought up a whole bunch of facts. He gave them his driver's license. He gave them. They had all of the information that was actually on that form except for the exact date he moved out of his previous house. There was no good reason he should have had to fill out that form. There's no good reason they should have offloaded it. And to be clear, plaintiff would agree or appellant would agree that if they had actually read the statements and noticed how comically suspicious the one purchase on the account was, they'd even noticed that that purchase existed, which they admit they can't say they did. They'd even noticed that existed and they'd called my client and my client had never answered that call. Then absolutely the ball would have been in his court. It would have been his problem, but they didn't even do the basic cursory investigation before offloading everything onto my client. And that is not the order in which this is supposed to go. All right, your time has expired. Thank you very much. Our thanks to both counsel. The case is taken under advisement and that concludes today's calendar. The court will be in recess. Thank you.